**2013-1354**
**(Reexamination No. 95/001,301)**

𝕴𝖓 𝕿𝖍𝖊

# 𝕽𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝕺𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘
## 𝕱𝖔𝖗 𝕿𝖍𝖊 𝕱𝖊𝖉𝖊𝖗𝖆𝖑 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

## ZUMBOX, INC.,

*Appellant,*

v.

## PITNEY BOWES, INC.,

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board.

———————————

## BRIEF OF APPELLEE

———————————

Matthew A. Smith
Zhuanjia Gu
TURNER BOYD LLP
2570 West El Camino Real
Suite 380
Mountain View, CA 94040
(650) 521-5930

*Counsel for Appellee*

# CERTIFICATE OF INTEREST

Counsel for Appellee certifies the following list in compliance with Federal Circuit Rule 47.4:

(1)  The full name of every party or amicus represented by me is:

Pitney Bowes Inc.

(2)  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Pitney Bowes Inc.

(3)  Disclosure of all parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by me:

i.  State Street Corporation, State Street Financial Center, One Lincoln Street, Boston, MA 02111

ii.  BlackRock, Inc. 40 East 52nd Street, New York, NY 10022

(4)  The names of all law firms and the partners or associates that appeared for the parties now represented by me in the trial court or agency or are expected to appear in this court are:

i.  Matthew A. Smith and Zhuanjia Gu, of Turner Boyd LLP

ii.  Harold C. Wegner and Andrew S. Baluch, of Foley & Lardner LLP

# TABLE OF CONTENTS

**PAGE:**

CERTIFICATE OF INTEREST ....................................................................i

TABLE OF CONTENTS.................................................................... ii

TABLE OF AUTHORITIES ..................................................................iv

STATEMENT OF RELATED CASES ................................................ vii

STATEMENT OF THE ISSUES ................................................................ 1

STATEMENT OF THE CASE .................................................................. 1

STATEMENT OF THE FACTS....................................................................... 2

    A.    The '586 patent....................................................................2

    B.    The Creswell Patent.............................................................3

    C.    The Reexamination Proceeding ...........................................4

        1.    The Reexamination Request .......................................4

    D.    The Board Appeal ...............................................................5

        1.    Zumbox's Appeal.......................................................5

        2.    Pitney Bowes's Response to the Appeal.....................5

        3.    The Examiner's Answer ..............................................6

        4.    Zumbox's Rebuttal.....................................................7

        5.    The Oral Hearing Before the Board...........................8

        6.    The Board Decision ...................................................9

7.    Zumbox's Request for Rehearing ...........................................10

8.    The Board's Decision on Rehearing ........................................11

E.    The Assistant Examiner's Allowance of the Related
      Application ...................................................................................11

SUMMARY OF THE ARGUMENT .............................................................. 12

ARGUMENT .................................................................................................. 12

STANDARD OF REVIEW ................................................................. 12

DISCUSSION......................................................................................13

I.    ZUMBOX'S APPEAL FAILS BECAUSE THE ASSISTANT
      EXAMINER NOW AGREES THAT THE CLAIMS ARE
      PATENTABLE .........................................................................14

II.   THE BOARD DECIDED THE CASE BEFORE IT—
      EXACTLY AS IT WAS REQUIRED TO DO ...................................15

III.  THE BOARD DID ADDRESS THE FINDINGS OF THE
      ASSISTANT EXAMINER ...............................................................20

IV.   ZUMBOX HAS CONSISTENTLY FAILED TO EXPLAIN
      WHY CRESWELL IS NOT DEFECTIVE........................................25

V.    EVEN IF THERE HAD BEEN AN ERROR, IT WOULD
      HAVE BEEN HARMLESS .............................................................27

VI.   ZUMBOX'S REQUESTED DISPOSITIONS ARE
      UNWARRANTED...........................................................................28

CONCLUSION ...................................................................................29

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

*Abbott Labs. v. TorPharm Inc.*,
 300 F.3d 1367 (Fed. Cir. 2002) ....................................................................18

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
 607 F.3d 817 (Fed. Cir. 2010) ................................................................8, 26

*Dickinson v. Zurko*,
 527 U.S. 150 (1999).......................................................................................12

*Ex parte Frye*,
 94 U.S.P.Q.2D (BNA) 1072 (BPAI 2010) ...................................................19

*Falkner v. Inglis*,
 448 F.3d 1357 (Fed. Cir. 2006) ....................................................................13

*In re Chapman*,
 595 F.3d 1330 (Fed. Cir. 2010) ....................................................................27

*In re Etter*,
 756 F.2d 852 (Fed. Cir. 1985) ......................................................................18

*In re Hitchings*,
 342 F.2d 80 (CCPA 1965)..............................................................................18

*In re Hyatt*,
 211 F.3d 1367 (Fed. Cir. 2000) ..............................................................19, 20

*In re McDaniel*,
 293 F.3d 1379 (Fed. Cir. 2002) ....................................................................27

*In re Ruschig*,
 379 F.2d 990 (CCPA 1967)......................................................................17, 19

*In re Watts*,
   354 F.3d 1362 (Fed. Cir. 2004) ............................................................26, 27

*Munoz v. Strahm Farms, Inc.*,
   69 F.3d 501 (Fed. Cir. 1995) ...................................................................27

*Northern Telecom, Inc. v. Datapoint, Inc.*,
   908 F.2d 931 (Fed. Cir. 1990) ............................................................16, 17

*Palmer v. Hoffman*,
   318 U.S. 109 (1943)...................................................................................27

*Powell v. McCormack*,
   395 U.S. 486 (1969)...................................................................................15

*Redox Tech. Inc., v. Pourreau, et al.*,
   73 U.S.P.Q.2D (BNA) 1435 (BPAI March 30, 2004)...................................18

**STATUTES:**

5 U.S.C. § 706(2)(A)........................................................................12, 13

35 U.S.C. § 6(b)(2)..................................................................................15

35 U.S.C. § 103 ..........................................................................................6

35 U.S.C. § 134(c) ...........................................................................15, 16

35 U.S.C. § 315(b)(1)........................................................................15, 16

**REGULATIONS:**

37 C.F.R. § 41.77(a)................................................................................16

37 C.F.R. § 41.79(d) ................................................................................13

**OTHER:**

MPEP § 704.01 ...................................................................................19

MPEP § 706(I) ...................................................................................19

MPEP § 706.03(w)..............................................................................19

MPEP § 2681 .....................................................................................16

# STATEMENT OF RELATED CASES

Pitney Bowes, Inc. is unaware of any other appeals or petitions taken in this *inter partes* reexamination proceeding. There are, however, other matters that involve the patent at issue in this appeal, U.S. Patent No. 7,058,586 ("the '586 patent"):

- A related litigation, styled *Pitney Bowes Software*, *Inc. v. Zumbox*, *Inc.*, Civil Action CV09-7373 MMM (RCx), filed in the United States District Court for the Central District of California and stayed on May 20, 2010.

- An *ex parte* reexamination of claims 1 and 10 of the '586 patent (Reexamination Control No. 90/011,234) filed September 15, 2010 and terminated on November 15, 2011 with the confirmation of claims 1 and 10.

- The '586 patent matured from Serial No. 09/588,763, filed June 6, 2000. Pitney Bowes later filed a first continuation application, U.S. Serial No. 11/446,791, now abandoned. In addition, Pitney Bowes filed a second continuation application, U.S. Serial No. 12/815,051, in which the Examiner has issued a Notice of Allowance on September 23, 2013.

Other than the related litigation, Pitney Bowes is not aware of any case pending in this or any other court that will directly affect or be affected by this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUES

Did the Patent Trial and Appeal Board (the "Board") commit procedural error by not *further* explaining how its decision, the merits of which are not challenged, related to the interim decision of an Assistant Examiner in a different proceeding, where the interim decision has since been withdrawn?

## STATEMENT OF THE CASE

This is an appeal from a decision in an *inter partes* reexamination before the United States Patent and Trademark Office ("USPTO"). The USPTO's decision was rendered by the Patent Trial and Appeal Board ("Board"). The Board affirmed the Reexamination Examiner's finding that claims 1-18 of U.S. Patent No. 7,058,586 ("the '586 patent") were patentable. This merits finding is not challenged here—rather, Zumbox asserts procedural error by the Board.

While the initial request for reexamination sought twelve different rejections over eight prior art references, Zumbox now seeks review only with respect to the Creswell reference. Even there, Zumbox limits its appeal to the procedural adequacy of the Board's written opinion for failing to expressly reconcile an allegedly inconsistent finding in a different patent application having similar claims. Nothing in Zumbox's appellate brief challenges the substance of the Board's findings on the merits.

## STATEMENT OF THE FACTS

### A.     The '586 patent

The *inter partes* reexamination concerned U.S. Pat. No. 7,058,586.[1]  The '586 patent (originally filed in the year 2000) discloses an information delivery system that helps recipients of mail control the mail that is sent to them.  (*See e.g.*, Abstract).  In simple terms, the '586 patent discloses the use of recipient preference profiles.  (*See e.g.*, Abstract).  These profiles contain information about the preferences of mail recipients.  (*See e.g.*, Abstract, Col. 4:12-5:11).  The recipients can access and change their profiles through a Web-based system.  (*See e.g.*, Col. 3:27-42).  The system also allows certain senders of mail to access the profiles, in order to conform to the recipients' preferences.  When a sender accesses a profile, the access is logged.  The log is used to notify senders when the profile changes. (*See e.g.*, Abstract).   Changes to a recipient preference profile are communicated to senders who have previously accessed the profile.  (*See e.g.*, Abstract).

This functionality is expressed in two claim limitations found in claim 1 (with similar limitations in claim 10):

- •     "the web server maintains a relationship between ***a log of recipient preference profiles*** out of the plurality of recipient preference profiles that have been ***accessed by a particular sender***; and"

---

[1] The *inter partes* reexamination was assigned control number 95/001,301.

- "for each of the recipient preference profiles in the log of recipient preference profiles, the web server provides ***a change notification to the particular sender*** of a change in the recipient preference profile"

For clarity, these limitations will be referred to as the "log" and "notification" features, respectively.

## B.    The Creswell Patent

U.S. Patent No. 6,564,264 to Creswell et al.[2] ("Creswell") was put forward as prior art.  (*See e.g.*, A42).

Creswell discloses a system and method for automatically updating a user's address information based on sent messages.  (*See e.g.*, Abstract).  The Creswell specification makes it clear that the system is intended to relieve the sender of "the burden of manually entering address changes into a user address book." (Abstract).  That is, instead of a manual process for correcting an address book, the Creswell patent disclosed "monitoring a user's outgoing and incoming messages to determine if the sender or recipient address is correct, and, if not, automatically locating the correct address."  (Col. 2:12-14).  To achieve this, Creswell discloses a network including "a message server coupled to a message store for incoming/outgoing messages."  (Col. 2:26-27).  When a user sends an outbound message, the message server scans the message for the "Send To" address and

---

[2] Zumbox's Appellate Brief to this Court mistakenly identifies the Creswell Patent as U.S. Patent No. 6,564,254.

sends the message if it finds the address in the user's address book.  (*See* Col. 2:39-42).  If the message server does not find the "Send to" address in the user's address book, the server performs a database search and, if the search locates new address information, generates a notification message to the user regarding the new address.  (*See* Col. 2:42-52).

### C.  The Reexamination Proceeding

#### 1.  The Reexamination Request

On January 22, 2010, Zumbox requested an *inter partes* reexamination in which it proposed twelve bases for rejection of claims 1-18 over eight prior art references.  One set of proposed rejections challenged claims 1, 2, 7, 10, 11, and 16 of the '586 patent as obvious over Creswell.  For each of its proposed rejections based on Creswell, however, Zumbox's Request was supported by a claim chart citing only to excerpts from prosecution history of a different application in the same patent family ("the '791 Application"), an application later abandoned during prosecution.  (*See* A50-57, A81-82).  Zumbox did not identify any material missing from Creswell, nor any reason to combine Creswell with another reference.  (*See* A50-57, A81-82).

On April 16, 2010, the Reexamination Examiner issued an Action Closing Prosecution, confirming all claims of the '586 patent.  With respect to the proposed obviousness rejections over Creswell, the Reexamination Examiner noted that

"Requestor merely asserts that a claimed relationship is obvious without any reasoning in support of such an assertion, nor is any specific basis for obviousness identified." (A334). The Reexamination Examiner issued a Right of Appeal Notice on December 21, 2010.

### D. The Board Appeal

#### 1. Zumbox's Appeal

In response to the Right of Appeal Notice confirming the '586 patent claims, Zumbox filed an Appeal to the Board of Patent Appeals and Interferences[3] on December 21, 2010. In the Appeal, Zumbox insisted that the claim charts in its original Request provided sufficient basis for its proposed rejections, and that there was no need to identify any "material missing from Creswell" because "no such material is missing from Creswell." (*See* A378-382). In addition, Zumbox complained that the Reexamination Examiner had not "looked further into the record" by either independently analyzing Creswell or reviewing comments made by the Assistant Examiner assigned to the '791 Application. (*See* A381-383).

#### 2. Pitney Bowes's Response to the Appeal

In a response to the Board Appeal dated June 13, 2011, Pitney Bowes demonstrated that there are indeed missing material from Creswell, namely, the "log" and the "notification" elements of the '586 patent claims. (*See* A604-605).

---

[3] Now known as the "Patent Trial and Appeal Board".

Pitney Bowes also noted in its response that Zumbox's brief failed to provide a proper motivation to combine.  (*See* A604-605)

### 3.    The Examiner's Answer

On September 22, 2011, the Reexamination Examiner issued an answer in which he addressed Zumbox's assertions.  With respect to Zumbox's proposed rejections over Creswell, the Reexamination Examiner described in detail the legal requirements for showing obviousness under the *Graham* factors, concluding that Zumbox's proposals failed to resolve "the difference between the primary teaching and the claimed invention."  (*See* A452).  In other words, Zumbox failed to "deliniat[e] the difference between the reference and the prior art, show[] … a teaching or equivalent reasoning regarding such difference, or [provide] a statement of obviousness or reasons for combining such into the Creswell reference."  (A450).  Moreover, the Reexamination Examiner noted that Zumbox was essentially arguing that Creswell was "an *anticipatory* reference which teaches the entirety of the claim without needing any specific modification, while continuing to assert the original argument that Creswell renders obvious claim 2 under 35 U.S.C. 103."  (A453).

With respect to Zumbox's charge that the Examiner failed to properly analyze comments made in the abandoned '791 Application, the Reexamination Examiner responded that: (1) he did consider the rejections in '791 Application

(*See* A448); (2) it is not incumbent on the Examiner, during *inter partes* reexamination, to "provide any new SNQs or proposed rejections of his own for the Requestor's sake" (A457); and (3) "the fact that a different Examiner rejected similar claims in a different proceeding of a different Patent application has no direct control over the instant Examiner's adoption or non-adoption of rejections proposed" (A456).

As for Zumbox's contention that Creswell was not missing any material, the Reexamination Examiner disagreed, finding instead that the "log" element was missing and that "[u]tilizing a change server such that users (senders) are notified if new address information is found is not the claimed step of accessing recipient profiles by the sender." (A462).

### 4. Zumbox's Rebuttal

On October 22, 2011, Zumbox filed a Rebuttal in which it again insisted that its proposed Creswell rejections were based on obviousness and not anticipation. To support this contention, Zumbox relied solely on the final rejection issued in the abandoned '791 Application. (*See* A496). Zumbox's Rebuttal also *did nothing* to address the arguments that Creswell did not teach the "log" or "notification"

elements.  Instead, Zumbox complained that these assertions by Pitney Bowes and the Reexamination Examiner were untimely and improper.[4]  (*See* A500-501).

### 5.    The Oral Hearing Before the Board

The Board conducted an Oral Hearing on May 16, 2012.  During the Hearing, Pitney Bowes's counsel submitted that: (1) Zumbox's proposed rejections over Creswell were deficient at least because they did not provide any motivation to combine (*see* A538-539); and (2) Creswell did not teach the "log" or "notification" features of the claims (*see* A562-564).

During the hearing, Zumbox did not address the "log" or "notification" features, prompting the Board to repeatedly ask Zumbox's counsel why Zumbox had chosen not to address the merits of this argument.  (*See e.g.*, A524-525, A527, and A566-569).  In each such instance, Zumbox's counsel repeated the complaint that arguments concerning the "log" and "notification" features were raised too late.  (*See e.g.*, A524-525, A527, A566-569).  For example, when the Board specifically asked Zumbox's counsel why he did not file a petition if he thought the arguments were late, Zumbox's counsel responded only that "[m]y

---

[4] Zumbox does not contend in its Appeal Brief *before this Court* that the Reexamination Examiner's statements regarding the "log" and "notification" elements were untimely, thereby waiving this argument.  *See Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010)("This Court has consistently held that a party waives an argument not raised in its opening brief.").

understanding was is [sic] that we didn't have those shots because prosecution was closed."  (A568-569)

### 6.    The Board Decision

The Board then issued its Decision affirming the Reexamination Examiner's decision not to adopt Zumbox's proposed rejections.

The Board first addressed Zumbox's assertion regarding the abandoned '791 Application by rejecting "Zumbox's view that the Examiner's action in this reexamination proceeding is 'arbitrary and unjust' simply because the Examiner reached a conclusion as to the content of the disclosure of the prior art which differs from that of another examiner."  (*See* A7-9).

The Board then analyzed the claim features at issue, namely:

"(1) the presence of a 'web server'; (2) that the web server maintains a relationship between a log of recipient preference profiles out of a plurality of recipient preference profiles that have been accessed by a particular sender, and (3) that the web server provides notification to a particular sender of a change in the recipient preference profile." (A9-10).

As for feature (1) relating to the "web server", the Board agreed with the reasons that Zumbox set forth in its Request, finding that "one with ordinary skill in the art would have appreciated that the various servers associated with the prior art may be configured as web servers."  (A13).

Rejecting Zumbox's position that discussion of features (2) and (3) (the "log" and "notification" features) in the Examiner's Answer was improper, the

Board stated that this assertion "simply conveys that the determination not to adopt Zumbox's proposed rejections was made because other features of the claims 1-18 beyond a 'web server' are also not disclosed or suggested in the prior art." (A12). The Board pointed out that Zumbox could have addressed the Reexamination Examiner's contentions, but that Zumbox "did not avail itself of that opportunity." (A13). In the absence of any such discussion, the Board had "considered the entirety of the record including Zumbox's request for *inter partes* reexamination." (A13). The Board found, however, that it remained unclear "how the prior art is understood to account for the other features at issue." (A13-14). After analyzing specific portions of Creswell upon which Zumbox relied to support the "log" and "notification" features, and the Examiner's and Pitney Bowes's arguments regarding these features, the Board stated:

> "it is simply not evident to us how those sections of Creswell disclose, or otherwise account for, the required features directed to maintenance by a web server of a log of recipient preference profiles where the server provides a change notification to a particular sender when there is a change in a given recipient preference profile." (A14).

### 7. Zumbox's Request for Rehearing

On September 20, 2012, Zumbox filed its Request for Rehearing in which it argued that "[t]he Board *also* misapprehended the matter of the '791 Application." (A577, emphasis added). While Zumbox agreed with the Board that "'there is no requirement that the Examiner of the present reexamination proceeding must adopt

the actions of another examiner in a separate proceeding,'" it maintained that the Board "misse[d] the point." (A578). In its Request for Rehearing, Zumbox again failed to address how Creswell accounted for the "log" or "notification" features of the '586 patent.

### 8. The Board's Decision on Rehearing

The Board denied Zumbox's Request for Rehearing on January 17, 2013 because the Request "proceed[ed] to effectively restate the same position that it had already submitted to this Board." (A22).

### E. The Assistant Examiner's Allowance of the Related Application

On September 23, 2013, the Assistant Examiner assigned to the '791 application withdrew her rejections over Creswell in continuation application serial number 12/815,051 (*See* A632). The Assistant Examiner found—much as did the Board in this proceeding—that the Creswell reference did not teach the "log" feature of the claims (*See* A633). In the words of the Assistant Examiner:

> "Creswell et al and Brandenberg et al all fail to disclose the feature of 'the server maintains a relationship between a log of recipient preference profiles out of the plurality of recipient preference profiles that have been accessed by a particular sender'. This distinct feature has been added to independent claims 1, 10, 19, 21, 24, and renders them and all claims that depend from them allowable." (A633).

11

## SUMMARY OF THE ARGUMENT

Zumbox alleges a narrow procedural error.  The alleged error is that the Board focused on the case before it, rather than "sufficiently" discussing the findings of an Assistant Examiner assigned to a related patent application.  The Zumbox's argument fails because the Assistant Examiner has since changed the findings on which the Zumbox relies, thus eliminating the sole argument that the Zumbox presents in this appeal.  The Zumbox's position also fails because: (1) despite having no obligation to do so, the Board did address the Assistant Examiner's findings; (2) the Board's decision was substantively correct (a fact not that Zumbox does not challenge); and (3) the '791 Assistant Examiner subsequently changed her findings to be in accord with the Board.  As such, any error was harmless.  Zumbox has thus not shown that the Board acted arbitrarily, capriciously or not in accordance with the law.  Furthermore, the request to reverse or vacate the Board's decision is not justified by the error alleged.

## ARGUMENT

## STANDARD OF REVIEW

The Administrative Procedure Act establishes the standard of review this Court should apply to Board decisions' (*See Dickinson v. Zurko*, 527 U.S. 150, 152 (1999)).  Under the Administrative Procedure Act, this Court reviews Board procedural decisions to determine whether they are "arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law." (5 U.S.C. § 706(2)(A); *see also Falkner v. Inglis*, 448 F.3d 1357, 1363 (Fed. Cir. 2006)).

## DISCUSSION

This is a very narrow appeal from a complex *inter partes* reexamination. The reexamination began with a challenge to eighteen claims over eight references in twelve proposed rejections. Each of the proposed rejections was found insufficient by the Examiner and later by the Board, causing Zumbox to abandon its position on the merits. The case has been whittled down to this appeal, which is based solely on an alleged procedural error.

Zumbox has no legally substantive basis for its assertion of error; instead, it appears to claim that Zumbox is dissatisfied with the level of explanation provided in the Board's opinion.[5] That opinion, according to Zumbox, should have explained why the position of an Assistant Examiner in a related application was incorrect. (*See e.g.*, Brief at pgs. 17-20, 25-26, 28). Zumbox's contention, however, is faulty for numerous reasons. First, the issue no longer exists, because the Assistant Examiner has since reversed her prior decision (**§I**, below), and there is no arguable inconsistency to be addressed. Second, the Board had no obligation to decide whether an Examiner in another proceeding was correct.

---

[5] There were, in fact, two Board opinions. There was a first opinion (issued August 20, 2012), and an opinion on a request for rehearing (issued January 17, 2013). The opinion on the request for rehearing is deemed to incorporate the first opinion by reference. *See* 37 C.F.R. § 41.79(d).

Rather, the Board was required to decide the case before it (**§II**, below).  Third, the

Board *did* explain why the Assistant Examiner was in error—it affirmed the

Reexamination Examiner's holding that the claims were patentable because the

prior art did not teach the limitations of the claims (**§III**, below).  Fourth, Zumbox

never explained why the Assistant Examiner in the other proceeding was *correct*,

despite multiple promptings from the Board.  Zumbox has thus waived its merits

argument (**§IV**, below).  Fifth, even if there had been an error, it would have been

harmless, because the Board's finding was correct on the merits (**§V**, below).

Finally, even if Zumbox's criticisms were factually accurate and legally well-

founded, the remedy Zumbox requests does not follow from the alleged error (**§VI**,

below).

## I.     ZUMBOX'S APPEAL FAILS BECAUSE THE ASSISTANT EXAMINER NOW AGREES THAT THE CLAIMS ARE PATENTABLE.

One essential link in Zumbox's chain of inferences is the inconsistency

between the decision of an Assistant Examiner in a related application on the one

side, and the decision of the Board and the Reexamination Examiner in this case on

the other side.  Whether or not this inconsistency was ever relevant, it no longer

exists.  On September 23, 2013, the Assistant Examiner withdrew her prior

rejection, allowing the application claims over Creswell.  (A632-633).  The

Assistant Examiner expressly found that Creswell did not teach the "log" feature of

the claims.  (*See* A633).  There is therefore no inconsistency upon which Zumbox

can rely in its appeal, so it should be dismissed.  (*See Powell v. McCormack*, 395

U.S. 486, 496 (1969)("a case is moot when the issues presented are no longer 'live'

or the parties lack a legally cognizable interest in the outcome.")).

## II.    THE BOARD DECIDED THE CASE BEFORE IT—EXACTLY AS IT WAS REQUIRED TO DO.

Zumbox complains that the "Board should have confronted and analyzed the

Examiner conflict head on…[and] that [the] analysis should have been made

explicit in the Decision so that appropriate appellate review could be made."

(Brief at pg. 22).   This assertion is without foundation.  The Board was not

required to discuss the findings of a junior agency employee in another proceeding.

Rather, the Board was required to decide the case actually before it—which is

exactly what it did.  Zumbox does not contend that the Board was *bound* by the

Assistant Examiner's interim findings, nor does Zumbox cite authority requiring

the Board to discuss those findings.

The Board's statutory role was to consider the appeal in the reexamination

before it.  (*See* 35 U.S.C. § 6(b)(2); 35 U.S.C. § 134(c); 35 U.S.C. § 315(b)(1)[6]) .

These statutes allowed Zumbox to appeal "any final decision favorable to the

patentability of any original or proposed amended or new claim of the patent."  (35

---

[6] Please note that that the present proceeding is subject to the statutes in
force prior to the effective date of the America Invents Act.

U.S.C. §§ 134(c) and 315(b)(1)).  The Board, in turn, was required to "affirm or reverse each decision of the examiner on all issues raised on each appealed claim, or remand the reexamination proceeding to the examiner for further consideration." (37 C.F.R. § 41.77(a); MPEP § 2681 ("After consideration of the record of the inter partes reexamination proceeding, including all briefs and the examiner's answer, the Board of Patent Appeals and Interferences (Board) issues its decision, affirming the examiner in whole or in part, or reversing the examiner's decision, sometimes also setting forth a new ground of rejection." (emphasis added)).

Zumbox appealed the Reexamination Examiner's decision, and the Board properly decided that Zumbox's appeal possessed no merit.  (*See* A2-17).  In so holding, the Board noted its own "role as a body charged with reviewing the patentability determinations of the Primary Examiner in this involved reexamination proceeding.  *See* 35 U.S.C. § 134(c)."  (A9).

This Court should take note of the very limited nature of the error asserted. Zumbox had previously argued to the Board that "there is a clear presumption that [the Assistant Examiner] came to the correct conclusion, as the Federal Circuit Court of Appeals has recognized that a presumption of administrative correctness attaches to her final rejection."  (A495, citing *Northern Telecom*, *Inc. v. Datapoint*,

*Inc.*, 908 F.2d 931, 939 (Fed. Cir. 1990)).[7] This was essentially an argument that the Board was bound by the prior Examiner's decision. In this appeal, however, Zumbox merely cites to *Northern Telecom*, but does not assert that the Assistant Examiner should be *presumed* correct. In fact, Zumbox states that it "never requested that the Board 'abrogate [its] role as a body charged with reviewing the patentability determinations of the Primary Examiner'." (Brief at pg. 27). In place of its presumption argument, Zumbox now contends that the Board should have provided more text in its opinion expressly discussing the Assistant Examiner's findings. (*See e.g.*, Brief at pg. 28).

Zumbox's new position relies on several arguments of dubious footing. First, Zumbox essentially argues that the Board must review "evidence" that detracts from its findings. In so arguing, however, Zumbox confuses the Assistant Examiner's *findings* for *evidence*. The only relevant "evidence" is the Creswell reference itself. The Assistant Examiner's findings concerning the Creswell reference do not take on the status of evidence—they are simply opinions (incorrectly) reached by an employee of the USPTO. (*See analogously In re Ruschig*, 379 F.2d 990, 993 (CCPA 1967) (an Examiner's decisions do not give

---

[7] This position was based on an incorrect reading of the cited law. An assumption of administrative correctness can arise from certain *agency* decisions. The decision of an Examiner, however, is not a decision of the agency. It is simply one step in the agency decision-making process. Even if Zumbox were correct, the presumption would apply equally to the Reexamination Examiner, and with greater force to the Board's decision.

rise to *res judicata*); *In re Hitchings*, 342 F.2d 80, 82 (CCPA 1965) ("[P]rinciples of res judicata should not apply where the [referenced] decision is no more than an unappealed final rejection of an examiner."); *Abbott Labs. v. TorPharm Inc.*, 300 F.3d 1367, 1379 (Fed. Cir. 2002) (even <u>prior Board decisions in the same case</u> do not give rise to *res judicata* where new argument is presented)).

Second, Zumbox quotes *In re Geisler* for the proposition that "a statement that merely points out what the claim recites, without more, is *not* a sufficient argument for patentability over a cited reference." (Brief at pg. 22). This argument does injustice to the Board's decision, however, which provided a reasoned statement for its holding. *See* **§III**, below. Furthermore, *Geisler* dealt with a patent applicant's burden to respond to a *USPTO finding*. In the reexamination, Zumbox had the burden to prove invalidity, the Board was well within its authority to find that Zumbox did not meet its burden by pointing to particular claim limitations not disclosed in the cited references. (*See In re Etter*, 756 F.2d 852, 857-58 (Fed. Cir. 1985); *Redox Tech. Inc., v. Pourreau, et al.*, 73 U.S.P.Q.2D (BNA) 1435 (BPAI March 30, 2004) ("Nevertheless, an entity maintaining that a claim is unpatentable in a proceeding in the PTO bears the burden of proving its case.")).

Zumbox also argues that MPEP §§ 706(I) and 704.01 forbid non-uniformity within the USPTO. (Brief at pgs. 25-26).[8] While Pitney Bowes agrees that uniformity is generally desirable, uniformity in this case was provided by the Board's decision. As Zumbox acknowledges, "in effect the Board picked which Examiner would win the dispute regarding whether these particular claims were obvious over Creswell." (Brief at pg. 18).

Zumbox's lack of authority to support its positions is telling. The Board had no obligation to evaluate the incorrect findings of the Assistant Examiner. This follows from the general rule that the Board is not obligated to give deference to Examiner decisions. For example, Examiner-level decisions are not given *res judicata* effect within the office—only Board decisions are so treated. (*See* MPEP § 706.03(w); *In re Ruschig*, 379 F.2d 990, 993 (CCPA 1967) (Rich, J.)). Even *within the same proceeding*, the Board decides issues raised by the parties without deference to the Examiner. (*See Ex parte Frye*, 94 U.S.P.Q.2D (BNA) 1072 (BPAI 2010) (*precedential*)). If the Board is allowed to reverse the Examiner *in the same proceeding* without deference, there can be no requirement to discuss findings of other Examiners made outside the record of the case under review.

Rather, the only requirement placed on the discussion in the Board's opinion is that it be "adequate to permit judicial review." (*In re Hyatt*, 211 F.3d 1367,

---

[8] These sections go nowhere near that far, as Zumbox's own description of them indicates.

1371 (Fed. Cir. 2000)). Even where the Board's rationale could have been more clear, this Court has affirmed decisions where the Board's "analysis is sufficient to apprise" the Court of the basis for the decision. (*In re Hyatt*, 211 F.3d at 1371). In this instance, the rationale for the Board's decision was crystal clear: the Creswell reference did not (in the Board's words) "disclose, or otherwise account for" the key limitations in the claims. (A14). This will be discussed in the next section.

## III. THE BOARD DID ADDRESS THE FINDINGS OF THE ASSISTANT EXAMINER.

Zumbox's contention that the Board "did not explain how it resolved the inconsistency between the *Graham* fact findings of its two Examiners" (Brief at pg. 16) is also *factually* incorrect. Although it had no obligation to do so, the Board evaluated the Assistant Examiner's findings regarding the Creswell reference. Indeed, an evaluation of those findings would have been difficult to avoid in practice, because Zumbox *copied* the relevant portions of the Assistant Examiner's office action concerning Creswell into its request for reexamination. (*See* A50-57, A81-82). These arguments were then rejected by the Reexamination Examiner, who found the claims patentable. (*See e.g.* A337-338, A356-357). On appeal, both Pitney Bowes and the Reexamination Examiner provided a detailed discussion of the failings of the Creswell reference. (*See* A604-605, A462). The Board affirmed the Reexamination Examiner. In so doing, the Board cited to the portions of Zumbox's request that quoted the Assistant Examiner. (*See* A13-14).

The Board also observed that it could not determine how Zumbox's proposed rejection (which was a copy of the Assistant Examiner's rejection) disclosed the key features of the claims. (*See* A13-15).

The key features found absent in Creswell are the "log" and "notification" features, which read as follows (in claim 1):

> "the web server maintains a relationship between a **log** of recipient preference profiles out of the plurality of recipient preference profiles that have been accessed by a particular sender;"

> AND

> "for each of the recipient preference profiles in the log of recipient preference profiles, the web server provides a change **notification** to the particular sender of a change in the recipient preference profile." (A14).

For those claim features, Zumbox's argument in its request for reexamination was provided in a claim chart that quoted the interim rejection by the Assistant Examiner in the other patent application. For the "log" feature, Zumbox's chart quoted the following argument of the Assistant Examiner:

| | |
|---|---|
| the web server maintains a relationship between a log of recipient preference profiles out of the plurality of recipient preference profiles that have been accessed by a particular sender; and | See "(Col. 4, lines 44-51, scanning the "Send To" address of out-going messages to determine if the "Send To" address is already in the user's data set, and a "yes" condition forward the "Send To" address which is in the address book to an operation for processing the "Sent Mail" using the User profile preferences in the database, wherein examiner interprets the log as the "Send To" address of the outgoing messages, and in this case, it is obvious that there is a relationship between the "Sent To" addresses that are scanned and the "Sent To" address already in the user's data set since they are being compared for matching data") |

For the "notification" feature, Zumbox's claim chart again quoted the

Assistant Examiner:

| | |
|---|---|
| for each of the recipient preference profiles in the log of recipient preference profiles, the web server provides a change notification to the particular sender of a change in the recipient preference profile; | See "col. 2, lines 49-53, new address information is obtained from the searching, the <u>message server</u> generates a <u>notification message</u>, w/col. 4, lines 51-57, notification)"<br><br>With respect to Creswell, the Examiner also notes: "*since a check is done to determine if the sender is in the user's data set as a result of determining if new address information is obtained from the searching, and then generating a notification message by the message server regarding the new address information, and also, since the user address book includes a series of contacts for each user, this suggests that the notification is directed to a plurality of senders who have accessed a particular recipient profile.*" |

The Board rejected Zumbox's argument and agreed with Pitney Bowes and

the Examiner. In doing so, the Board explained that it had examined the entire

record, including Zumbox's request for reexamination, Zumbox's Appeal Brief,

Zumbox's Rebuttal Brief, and input obtained at the Oral Hearing. The Board's

opinion states:

> "[w]e have considered the entirety of the record including Zumbox's request for inter partes reexamination….it is not apparent to us how the prior art is understood to account for the other features at issue in this reexamination appeal proceeding….With respect to the ["log" and "notification"] features, and the corresponding features in claim 10, Zumbox, at various portions of its request for reexamination, pointed to content of Creswell, Harkins, Goodman, Frey, Shaffer, and Armstrong as disclosing those features. For instance, in Creswell, Zumbox relied on disclosures at column 2, lines 49-53 and column 4, lines 44-57 (e.g., Req., pp. 16-17), as setting forth the pertinent

features. However, as the Examiner (Ans., pp. 34-35)[9] and Pitney Bowes (Resp. Br., pp. 5-6)[10] concluded, it is simply not evident to us

---

[9] For reference, the Examiner's answer on those referenced pages states:

"As to Appellant's arguments that Creswell teaches the claim, the Examiner disagrees. The Examiner noted in the RAN that Creswell does not render obvious the claims at issue. Further, Appellant asserts that the 'Send To' address of an outgoing email message scanned to be compared to addresses in an address book is the claimed 'log', but a single scanned e-mail address is not a *log of recipient preference profiles* as claimed. Appellant asserts that the Preference Profiles stored in database 24 are the claimed profiles, but does not explain how an e-mail address comprises a log of such profiles, when the profiles of Creswell describe processing details for various message types."

"Noting Appellant's proposed rejection, it is clear that the same flaw exists in Creswell; the 'log' Appellant reads on the claimed log is merely a 'Send To' address in an outgoing e-mail from a sender, and Creswell does not disclose that this e-mail address 'record[s] which preference profiles that a particular sender has accessed'. Utilizing a change server such that users (senders) are notified if new address information is found is not the claimed step of accessing recipient profiles by the sender." (A462)(emphasis in original).

[10] For reference, Pitney Bowes's response Brief on those referenced pages states:

"The request [for reexamination] identifies the 'Sent To' address of the outgoing messages as the claimed 'log of recipient preference profiles out of the plurality of recipient preference profiles that have been accessed by a particular sender.' However, [Zumbox] fails to show any access by the Sender of a Recipient profile. The portions of Creswell alleged to teach the claims relate to the Sender only. The Sender sends a message. The message is scanned. The system checks the Sender's address book to see if the Send To address is present. If it is not, a database search is performed, and the Sender receives a message about an address book update. At no point does the Sender access a Recipient profile via a Web server, and at no point does the

how those sections of Creswell disclose, or otherwise account for, the required features directed to maintenance by a web server of a log of recipient preference profiles where the server provides a change notification to a particular sender when there is a change in a given recipient preference profile." (A12-13).

The Board's decision more than meets the substantial evidence standard: it is correct. <u>Zumbox does not argue otherwise</u>. Instead, Zumbox argues that the Board should have explained why the Assistant Examiner was incorrect. Zumbox ignores, however, that the Board did exactly that. By finding that Creswell did not teach two key limitations of the claims (as well as adopting the reasoning of the Examiner and Pitney Bowes) the Board demonstrated that the Assistant Examiner's conclusions were incorrect.

---

<u>system of Creswell keep a log of such accesses</u>. The claimed 'log' is significant, at least because it promotes the efficient delivery of information about any changes to a recipient's profile. *See* '586 patent, 6:4-8....

[concerning the 'notification' feature] The Original Request [for reexamination] identifies '[t]he notification message' which is placed 'in the 'In Box' of the user' once confirmation is received from a user that a new 'Sent To' address should be added to the 'Address Book.' *See* Creswell, 4:51-56. <u>This is simply the Sender being made aware of a change to its own address book</u>. <u>The notification is not of a change to a Recipient profile</u>, <u>and the Sender is not notified because its access to a changed Recipient profile was logged</u>." (A604-605) (emphasis added).

## IV. ZUMBOX HAS CONSISTENTLY FAILED TO EXPLAIN WHY CRESWELL IS NOT DEFECTIVE.

Zumbox has never explained why Creswell teaches the "log" and "notification" features of the claims, despite having had numerous opportunities to do so. Zumbox's first opportunity came in the request for reexamination. There, however, Zumbox elected only to copy vague interim assertions of the Assistant Examiner. When Pitney Bowes and the Reexamination Examiner criticized these assertions on appeal, Zumbox could have responded in its rebuttal brief. Instead, Zumbox chose to argue that the criticisms were untimely. (*See* A503). Zumbox did not, however, file a petition to reopen prosecution.[11]

At the Oral Hearing, the Board members repeatedly asked Zumbox's counsel why Zumbox had chosen not to address the "log" and "notification" features as they related to Creswell. (*See e.g.*, A524-525, A527, A566-569). Zumbox responded only by reiterating its procedural complaints. (*See e.g.*, A524-525, A527, A566-569). Nearing the end of the Hearing, Judge Easthom asked "[w]hy didn't you respond to this in the rebuttal brief on the merits?" (A568). Again without addressing the merits, Zumbox's counsel responded that "[m]y

---

[11] Such a petition would have been fruitless. Had the petition been successful, the Reexamination Examiner could have been required to re-open prosecution. The Reexamination Examiner, however, had no reason to come to a different conclusion, because Zumbox never offered argument as to why the Examiner was incorrect. In the absence of any reasoning showing that the Reexamination Examiner was incorrect, such a petition could only have resulted in delay.

understanding was is [sic] that we didn't have those shots because prosecution was closed."  (A569).

In the resulting Decision, the Board noted that Zumbox "did not avail itself of th[e] opportunity" to address the Reexamination Examiner's contentions regarding the "log" and "notification" features.  (*See* A13).  Zumbox then filed a Request for Rehearing, but *still* did not address the merits.  In its Opening Brief to this Court, Zumbox passes up its *fourth* opportunity to explain how Creswell accounts for the "log" and "notification" features, choosing again to parrot the Assistant Examiner.

Zumbox has been aware that Creswell does not teach the "log" and the "notification" features since at least June of 2011, when Pitney Bowes responded to Zumbox's Board Appeal.  Since then, the Reexamination Examiner and the Board also concluded that Zumbox's Request did not adequately account for these features in Creswell.  Despite repeated criticism, Zumbox chose not to provide additional support in its Rebuttal, a petition, its Request for Rehearing, or its appeal to this Court.  As such, Zumbox has waived any argument based on the merits of the reference.  (*See Advanced Magnetic Closures, Inc.*, 607 F.3d at 833; *see also In re Watts*, 354 F.3d 1362, 1367-68 (Fed. Cir. 2004) ("We generally do not consider argument that the applicant failed to present to the Board.")).

## V. EVEN IF THERE HAD BEEN AN ERROR, IT WOULD HAVE BEEN HARMLESS.

Even if the Board were found to have committed error by not sufficiently discussing the Assistant Examiner's findings, the error would be harmless. This Court has noted in the past that "the harmless error rule applies to appeals from the Board just as it does in cases originating from district courts." (*In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004) (Citing *In re McDaniel*, 293 F.3d 1379, 1385-86 (Fed. Cir. 2002))). The harmless error rule requires that "the appellant must not only show the existence of error, but also show that the error was in fact harmful because it affected the decision below." (*In re Chapman*, 595 F.3d 1330, 1338 (Fed. Cir. 2010)(Citing *Munoz v. Strahm Farms, Inc.*, 69 F.3d 501, 504 (Fed. Cir. 1995)("The correction of an error must yield a different result in order for that error to have been harmful and thus prejudice a substantial right of a party.")); *Palmer v. Hoffman*, 318 U.S. 109, 116 (1943)("He who seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.")).

As discussed above in **§III** above, the Board correctly found that Creswell does not teach the "log" and "notification" features of the claims. Moreover, Zumbox has failed to provide any substantive arguments on this issue during the Board Appeal process, and has waived any such argument by not including it in its Opening Brief. The Assistant Examiner has also reversed her prior rejection over

Creswell. Accordingly, further discussion of the Assistant Examiner's findings in the Board's opinion would not change the outcome.

## VI. ZUMBOX'S REQUESTED DISPOSITIONS ARE UNWARRANTED.

In its Opening Brief, Zumbox requests that the Court reverse the Board's decision or, in the alternative, vacate and remand this matter back to the Board. (*See* Brief at pg. 30). Either disposition would be inappropriate.

Reversal is inappropriate here because it would result in rejection of the claims. Zumbox does not, however, provide any argument that the Board is wrong on the merits, and has waived its right to have a rejection entered. *See* **§IV**, above.

Zumbox's request that the Court vacate and remand the matter because the Board Decision "cannot be reviewed meaningfully for compliance with the substantial evidence standard" is likewise ill-founded. First, Zumbox's request that the Court vacate and remand is futile because Zumbox has not explained how the Board has erred on the merits. Without such an explanation, the Board's conclusion on remand would presumably remain the same.

Zumbox's request to vacate the Board's judgment is further improper because it seeks to set aside a USPTO decision on twelve proposed rejections, where Zumbox has challenged at most three of the twelve rejections. Even if Zumbox had shown that the Board had acted arbitrarily and capriciously, and even

if the error were not harmless, the correct remedy would be to vacate only the

portion of the judgment allegedly affected by the error.

## CONCLUSION

Pitney Bowes therefore respectfully submits that this Court should **AFFIRM**

the decision of the Patent Trial and Appeal Board.

/s/ Matthew A. Smith
Matthew A. Smith
Zhuanjia Gu
TURNER BOYD LLP
2570 West El Camino Real
Suite 380
Mountain View, CA 94040
Telephone: (650) 521-5930
Facsimile: (650) 521-5931

*Counsel for Appellee Pitney Bowes*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 2nd day of October 2013, I electronically

filed the foregoing with the Clerk of Court using the CM/ECF System, which will

send notice of such filing to the following registered users:

David H. Judson
LAW OFFICES OF DAVID H. JUDSON
15950 Dallas Parkway, Suite 225
Dallas, TX 75248
(214) 939-7659

*Counsel for Appellant*

I further certify that, upon acceptance and request from the Court, the

required paper copies of the foregoing will be deposited with United Parcel Service

for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL

CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES
421 East Franklin Street, Suite 230
Richmond, VA 23219

## CERTIFICATE OF COMPLIANCE
### With Type-Volume Limitation, Typeface Requirements,
### And Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      32(a)(7)(B) because:

          this brief contains <u>6,452</u> words, excluding the parts of the brief
          exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

          this brief has been prepared in a proportionally spaced typeface using
          <u>Microsoft Word</u> in <u>14 Times New Roman</u>.

                              <u>/s/ Matthew A. Smith</u>
                              Matthew A. Smith